UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-139-H

TRES JEANEE, INC.                                                                    PLAINTIFF

v.

BROLIN RETAIL SYSTEMS MIDWEST, INC., et al.                DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff, Tres Jeanee, Inc. f/d/b/a Oscar Brown's South Beach Station ("Tres Jeanee") entered into an agreement with Brolin Retail Systems Midwest, Inc. ("Brolin") for the purchase, sale, and installation of a restaurant computer system. When the system allegedly failed to function properly, Tres Jeanee sued Brolin for breach of warranties, breach of contract, and negligence. Tres Jeanee also sued Micros Systems, Inc. ("Micros"), the manufacturer of the computer system, for breach of express warranty and implied warranty of merchantability. Defendants have moved to compel arbitration and stay proceedings, pointing to an arbitration clause contained in the purchase, sale, and installation agreement between Tres Jeanee and Brolin contains. Tres Jeanee concedes to arbitration with Brolin, but opposes arbitration with Micros since it was not party to the agreement. For the following reasons, the Court does not believe that Micros can compel Tres Jeanee to arbitrate their claims against Micros.

I.

In or around December 2003, Tres Jeanee contracted with Brolin for the purchase, installation, and service of a retail computer system comprised of a Micros 3700 PC server, hardware, and software, for use in its restaurant, Oscar Brown's South Beach Station. The

agreement between Tres Jeanee and Brolin contained the following arbitration clause:

> The validity of any controversy or claim arising out of or in connection with this Agreement shall be subject to Arbitration by a single arbitrator under the auspices of the American Arbitration Association ("AAA") pursuant to its commercial Arbitration Rules
> . . . .

The computer system had been manufactured by Micros. According to Tres Jeanee, the system failed to function properly from the date of its installation until the removal of the system in the fall of 2006.

Tres Jeanee sued both Brolin and Micros for breach of express warranty and breach of implied warranty of merchantability. Tres Jeanee brought several additional claims against Brolin alone for breach of warranty of fitness for a particular purpose, breach of contract, breach of implied covenant of good faith and fair dealing, and negligence. Defendants have moved to compel arbitration.

II.

Tres Jeanee does not object to arbitration with Brolin in accordance with their written agreement. However, it opposes arbitration with Micros, which was not party to that agreement. Therefore, the only issue is whether Micros, as a nonsignatory to the arbitration agreement, may nevertheless compel Tres Jeanee to arbitrate.

In deciding whether a party may be compelled to arbitrate a dispute, the Court must "apply ordinary state law principles that govern the formation of contracts," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), and "the federal substantive law of arbitrability," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In other words, state law governs questions concerning the validity, revocability, or enforceability

of contracts generally, but the Federal Arbitration Act preempts state laws applicable only to arbitration provisions. *See Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003). Here, the question of whether a nonsignatory may compel Tres Jeanee to arbitrate presents no state contract law question of contract formation or validity, so the Court looks to the federal substantive law of arbitrability.

Federal policy favors arbitration, and any doubts regarding arbitrability should be resolved in favor of arbitration. *See Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25). However, "no matter how strong the federal policy favors arbitration, 'arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration.'" *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (quoting *United Steelworkers, Local No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972)). Since Micros was not party to the agreement, its argument that Tres Jeanee's claims against it fall within the scope of the broad arbitration clause in the agreement with Brolin is not very persuasive.

In limited circumstances, some courts have used equitable estoppel to permit a nonsignatory to an arbitration agreement to compel arbitration.[1]  *See* 1 *Domke on Com. Arb.* § 13:8 (2007). Although the parties cite and this Court finds no case in which the Sixth Circuit has

---

[1] The parties failed to argue estoppel, which is, as the Court sees it, the only theory upon which Micros, as a nonsignatory to the arbitration agreement, could compel Tres Jeanee to arbitrate its claims. The only supporting authority that the plaintiff cites in favor of allowing the claims to proceed against Micros separately, *Glazer v. Lehman Brothers*, 394 F.3d 444 (6th Cir. 2005), deals primarily with the contractual validity of an arbitration agreement and the severability of that question from the rest of the issues subject to arbitration. However, the plaintiff here does not contend that the arbitration provision in the Agreement is invalid or fraudulently induced, and so the case is inapplicable.

applied the theory to an arbitration agreement, other circuits generally agree that equitable estoppel may be used when the claims asserted against the nonsignatory are closely related to the agreement containing the arbitration clause. *See* Thomas H. Oehmke, 1 *Commercial Arbitration* § 11:1 (2007). In determining whether to apply equitable estoppel in such cases, courts have looked to the relationships of the persons, wrongs and issues, in particular whether the claims that the nonsignatory sought to arbitrate were intimately founded in and intertwined with the underlying contract obligations. *See, e.g., Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001) (citations omitted). Courts have held that a nonsignatory could compel arbitration when the signatory to the contract containing an arbitration clause raised allegations of substantially interdependent and concerted misconduct by both the nonsignatory and another signatory. *See id.* In *Choctaw*, the Second Circuit held that a signatory to a construction contract containing an arbitration clause was estopped from avoiding arbitration with a surety, a nonsignatory, because the issues that the nonsignatory sought to resolve were intertwined with the contract that the power generator had signed. *See id.* The construction contract had been incorporated by reference into the surety contract, and the dispute concerned the duty to replenish a letter of credit maintained under the construction contract. *Id.* Since its cause of action was so intertwined with the construction contract, the signatory was estopped from avoiding arbitration.

Other courts have held that a nonsignatory may compel arbitration when the signatory to a written agreement containing an arbitration clause must rely on the terms of that written agreement in asserting its claims against the nonsignatory. *See, e.g., Hughes Masonry Co., Inc. v. Greater Clear County Sch. Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir. 1981). In *Hughes*

*Masonry*, the court held that a nonsignatory construction manager could compel a contractor to arbitrate his claims of interference with contract. The claims were based on duties and responsibilities ascribed to the construction manager by an agreement between the contractor and the developer that contained an arbitration clause. *Id.* Since the duties that had been allegedly breached arose from a contract containing an arbitration clause, the signatory was estopped from avoiding arbitration.

Here, the breach of warranty claims raised by Tres Jeanee against Micros are not founded in or intertwined with the underlying contract obligations of Brolin. Although Tres Jeanee brings breach of warranty claims against both parties, they are founded upon different theories: Brolin for installation and maintenance and Micros as manufacturer for product defects. Plaintiff's claims sound in tort and are not founded upon any contractual obligation with Brolin. Although the claims arise from the same circumstances, they do not appear intertwined as other courts have required.

The Fourth Circuit has recognized the difference between tort-based warranty claims and claims based on contract in the context of a motion to compel a nonsignatory to arbitrate. *See R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157 (4th Cir. 2004). In *Griffin*, a general contractor sued a homeowners association to force arbitration of claims of negligence and breach of warranty of good workmanship, which had been brought by the homeowners association in state court. *Id.* at 159-60. The general contractor had a contract with the developer of the property that contained an arbitration clause. *Id.* The general contractor argued that the arbitration clause in the contract was enforceable against the association through the doctrine of equitable estoppel. *Id.* at 160. In affirming the district court, the Fourth Circuit

5

refused to compel arbitration in part because the negligence and breach of warranty claims arose from common law legal duties, which were not dependent upon the terms of the contract. *Griffin*, 384 F.3d at 162.  Even though the formation of the contract meant that the general contractor would build the condominium, thereby assuming the common law duties, the duties flowed from the common law, not the contract.  *Id.*

The Fourth Circuit's rationale can be reasonably applied here.  Tres Jeanee's claims of breach of express warranty and breach of implied warranty of merchantability are founded in obligations arising out of Kentucky common law.  They are separate from any obligations created by the contract with Brolin, even though the contract with Brolin guided the sale to Tres Jeanee that triggered the common law duties.

Denying Micros' motion to compel arbitration may cause some inefficiency and additional expense in the litigation of these claims.  Perhaps there is some danger of inconsistent results.  However, these concerns do not affect the outcome of a motion to compel in these circumstances.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record